**Mark A. PHILIPS, Plaintiff,**

v.

**William PERRY, Secretary of Defense; John H. Dalton, Secretary of the Navy; and M.B. Margosian, Commanding Officer, Transient Personnel Unit, Puget Sound, Defendants.**

**No. C93–154WD.**

United States District Court,
W.D. Washington,
at Seattle.

March 17, 1995.

540

Jett L. Whitmer, Everett, WA, for Mark A. Philips.

Brian C. Kipnis, U.S. Atty's. Office, Seattle, WA, Vincent Garvey, U.S. Dept. of Justice, Civ. Div., Washington, DC, Mark T. Quinlivan, U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, David M. Glass, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, for Les Aspin, Frank B. Kelso, II, Anne K. Tyler.

Lisa M. Stone, Seattle, WA, Deborah A. Ellis, Now Legal Defense and Educ. Fund, New York City, for amicus Now Legal Defense and Educ. Fund.

Lisa M. Stone, Seattle, WA, for amicus Northwest Women's Law Center.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

DWYER, District Judge.

### I. INTRODUCTION

Plaintiff Mark A. Philips, a machinist's mate second class in the United States Navy, has sued for an injunction to prevent his discharge from the service. The defendants are the Secretary of Defense, the Secretary of the Navy, and the Commanding Officer of the Transient Personnel Unit, Puget Sound. Both sides have moved for summary judgment. All materials filed by the parties and amici curiae,[1] and counsel's arguments at a

hearing held on February 22, 1995, have been fully considered. There is no genuine issue of material fact for trial, and the case is ripe for summary judgment under Fed. R.Civ.P. 56.

The central question is whether the Navy may discharge a member who has engaged in homosexual acts and says he will continue doing so. A federal statute, and regulations adopted by the armed forces, provide for discharge on this ground. The United States Court of Appeals for the Ninth Circuit has held that regulations of this nature—directed to homosexual acts rather than merely to status or orientation—are constitutional. *See Meinhold v. U.S. Dept. of Defense*, 34 F.3d 1469, 1472 (9th Cir.1994); *Beller v. Middendorf*, 632 F.2d 788, 801–812 (9th Cir. 1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). Because plaintiff's discharge is based upon homosexual acts, this case differs from others holding that the military is barred, by the constitutional guaranty of equal protection, from discharging a member based on sexual orientation alone. *E.g., Cammermeyer v. Aspin*, 850 F.Supp. 910 (W.D.Wash.1994). The law of the Ninth Circuit, binding upon this court, requires that plaintiff's motion for summary judgment be denied and that defendants' motion be granted.

### II. HISTORY OF PROCEEDINGS

Petty Officer Philips joined the Navy in 1988 and is trained as a nuclear mechanic. He has an excellent service record. On November 19, 1992, while assigned to the U.S.S. NIMITZ, he approached his division officer and stated that he was a homosexual. The first of two board proceedings resulted from this statement. After being interviewed aboard ship on December 5, 1992, Philips was transferred off the NIMITZ to a shoreside billet in this district and processed for administrative discharge. The regulations in effect at the time called for the separation of any service member who engaged in homo-

---

1. Amici curiae are the NOW Legal Defense and Education Fund, Northwest Women's Law Center, Equal Rights Advocates, National Center for Lesbian Rights, National Organization for Women, and Washington State NOW, all supporting plaintiff's position in a single brief; and the Center for Military Readiness, Family Research Council, and Military Coalition, all supporting defendants' position in a single brief.

sexual acts *or* who "stated that he or she is a homosexual." Department of Defense ("DOD") Directive 1332.14 (Jan. 28, 1982), published at 32 C.F.R. Pt. 41, App. A. The Navy relied upon the latter provision and Philips's November 19, 1992, statement to his division officer.

A Navy administrative board hearing was scheduled for February 10, 1993. On February 5, Philips filed this lawsuit seeking to prevent defendants' predecessors in office from discharging him. He alleged that he was "being processed for discharge from the service based solely on his status as a homosexual." Dkt. # 1, ¶ 10. A temporary restraining order was denied on February 9, 1993, because irreparable harm had not been shown; a recent Presidential statement showed that Philips probably would be transferred temporarily to the standby reserve, and under a forthcoming new policy might not be discharged at all. Dkt. ## 10, 28, 26. The board convened as scheduled on February 10, 1993. Philips appeared in person and was represented by civilian and military counsel. After a hearing the board recommended that Philips be discharged because of his statement that he was a homosexual.

The 1993 board recommendation was never carried out. Philips was kept on active duty while the Navy awaited the new policy and the outcome of other lawsuits. On November 4, 1993, a stipulated order was entered staying proceedings in this case until the Ninth Circuit decided *Meinhold.* Dkt. # 36.

The second administrative process was commenced in the spring of 1994. *Meinhold* was still awaiting decision but the Navy's revised policy on homosexuals, implementing a statute newly adopted by Congress, had taken effect on February 28, 1994. The new policy recited that a service person's sexual *orientation* was his or her private business, but continued in force the longstanding rule that homosexual *acts* were a ground for discharge. Navadmin 033/94 ¶¶ 4, 7. By letter dated April 1, 1994, the Navy notified Philips that his discharge would be considered by a new board, based on his statement to an investigating officer on December 5, 1992, that he engaged in homosexual acts, and his

statement in the same interview that he is a homosexual. The latter statement, under the new policy, creates a rebuttable presumption that the person engages, or intends to engage, in homosexual acts. Navadmin 033/94 ¶ 7.C(2). The proposed ground of separation was homosexual conduct, not status.

The second board convened on July 12, 1994. Plaintiff again appeared in person and by civilian and military counsel. The board heard testimony from Lieutenant Commander Michael I. Quinn, who had interviewed plaintiff aboard the NIMITZ on December 5, 1992, and received in evidence the officer's interview notes and summary. Quinn's evidence may be summarized as follows:

Quinn was the judge advocate aboard the NIMITZ. In early December 1992 he heard that the *Bremerton Sun,* a daily newspaper, was about to publish a story that Philips was serving aboard the ship and had stated that he was a homosexual. (Plaintiff's November 19 statement to the division officer had not yet made it up the chain of command.) Quinn, after consulting with other officers, decided that he should interview Petty Officer Philips, and did so aboard the ship on December 5, 1992. Quinn told Philips that one purpose of the interview was to prepare for administrative separation proceedings; Philips's responses showed that he already knew this. Philips said that within the preceding year he had discovered himself to be a homosexual; that his first homosexual encounter, in the fall of 1991, had followed a visit to a gay bar in Seattle; that he had sexual relations with a man that night; that he had had sexual relations with men about a dozen times since then; that when ashore he frequented gay bars about two or three times a week; that his sexual encounters never involved other military members, and never occurred aboard ship or at a military installation; that the acts were consensual, not for compensation, and in private; that he would continue to have sex with men; that he had experienced no problems at work because of his homosexuality; that his plan was to educate the military that discharging homosexuals costs money and valuable personnel; that he wanted to show that homosexuals can serve honorably; and that he wanted to be

processed for discharge, to fight the process, and to win by being retained in the naval service.

Petty Officer Philips, under questioning by his civilian counsel, gave the board an unsworn statement not subject to cross-examination. The statement concerned his military history and hopes for future service; it did not describe the events in question or his interview by Lieutenant Commander Quinn.

At the conclusion of the hearing, the board found that plaintiff had engaged in homosexual acts.[2] The board also found that plaintiff had engaged in homosexual conduct as evidenced by his statement that he was a homosexual.[3] The board recommended that plaintiff be honorably discharged from the Navy.

On December 22, 1994, upon learning that his discharge was about to become effective, plaintiff moved for a temporary restraining order. On December 23, 1994, following a hearing, the court lifted the stay and preliminarily enjoined defendants from discharging plaintiff, thus preserving the status quo until summary judgment motions could be decided on an expedited schedule. Dkt. # 48.

## III. STATUTORY AND REGULATORY PROVISIONS

Plaintiff's first separation proceeding in 1993 was brought under a DOD directive in effect since 1982. With certain exceptions, it provided for the discharge of any enlisted service member who "engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts" or who "stated that he or she is a homosexual." DOD Directive 1332.14 (Jan. 28, 1982), 32 C.F.R. Pt. 41, App. A.

For several months in 1993 the executive and legislative branches of the federal government worked toward a new policy governing homosexuals in the military. Congress heard committee testimony from senior military officers and others. On July 19, 1993, the President and Secretary of Defense announced DOD's "policy on homosexual conduct in the armed forces." The main points of that policy were codified in legislation enacted by Congress and signed by the President on November 30, 1993. 10 U.S.C. § 654. On December 22, 1993, DOD issued implementing directives; these were modified slightly on February 28, 1994, and made effective on that date. On the same date, each military service issued instructions implementing the DOD directives. *See* Navadmin 033/94: Implementation of DOD Policy on Homosexual Conduct.

Congress, in enacting the new statute, made fifteen legislative findings, the last four of which read as follows:

(12) The worldwide deployment of United States military forces, the international responsibilities of the United States, and the potential for involvement of the armed forces in actual combat routinely make it necessary for members of the armed forces involuntarily to accept living conditions and working conditions that are often spartan, primitive, and characterized by forced intimacy with little or no privacy.

(13) The prohibition against homosexual conduct is a long-standing element of military law that continues to be necessary in the unique circumstances of military service.

(14) The armed forces must maintain personnel policies that exclude persons whose presence in the armed forces would create an unacceptable risk to the armed forces' high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability.

---

**2.** In this regard, the board also found that plaintiff had not demonstrated all of the following: (a) that such acts are a departure from his usual and customary behavior; (b) that such acts, under all of the circumstances, are unlikely to recur; (c) that such acts were not accomplished by use of force, coercion, or intimidation; (d) that under the particular circumstances of the case, plaintiff's continued presence in the Naval Service would be consistent with the interest of the Naval Service in proper discipline, good order, and

morale; and (e) that he does not have a propensity or intent to engage in homosexual acts. *See* 10 U.S.C. § 654(b)(1).

**3.** The board also found that plaintiff had not demonstrated that he was not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts. *See* 10 U.S.C. § 654(b)(2).

(15) The presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability.

10 U.S.C. § 654(a).

The statute goes on to provide that a member of the armed forces "shall be separated" from the service if one or more of the following findings is made in accordance with regulations:

(1) That the member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts unless there are further findings, made and approved in accordance with procedures set forth in such regulations, that the member has demonstrated that—

(A) such conduct is a departure from the member's usual and customary behavior;

(B) such conduct, under all the circumstances, is unlikely to recur;

(C) such conduct was not accomplished by use of force, coercion, or intimidation;

(D) under the particular circumstances of the case, the member's continued presence in the armed forces is consistent with the interests of the armed forces in proper discipline, good order, and morale; and

(E) the member does not have a propensity or intent to engage in homosexual acts.

(2) That the member has stated that he or she is a homosexual or bisexual, or words to that effect, unless there is a further finding, made and approved in accordance with procedures set forth in the regulations, that the member has demonstrated that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

(3) That the member has married or attempted to marry a person known to be of the same biological sex.

10 U.S.C. § 654(b).

Thus, homosexual acts will result in separation from the service unless the member shows the factors listed in subsections 1(A)– 1(E).

A further exception is made where the member engaged in conduct or made statements to avoid or terminate military service *and* separation would not be in the best interest of the armed forces. 10 U.S.C. § 654(e).

The definitions section of the statute includes the following:

(1) The term "homosexual" means a person, regardless of sex, who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts, and includes the terms "gay" and "lesbian".

\* \* \* \* \* \*

(3) The term "homosexual act" means—

(A) any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires; and

(B) any bodily contact which a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in subparagraph (A).

10 U.S.C. § 654(f).

DOD and Navy implementing regulations track the statute and add details for administrative processing. *See, e.g.,* DOD Dir. 1332.14, *Enlisted Administrative Separations*; Navadmin 033/94. The "don't ask, don't tell" provisions as to Navy personnel read in part as follows:

A person's sexual orientation is considered a personal and private matter, and is not a bar to service entry or continued service unless manifested by homosexual conduct. During the accession process, all applicants, prospects and members of the dep [sic] shall not be asked or required to reveal whether they are heterosexual, homosexual or bisexual and will not be asked or required to reveal if they have engaged

in homosexual conduct unless independent evidence is received indicating that the applicant engaged in such conduct or unless the applicant volunteers a statement that he or she is a homosexual or bisexual or words to that effect.

\*　　\*　　\*　　\*　　\*　　\*

Commanders or appointed inquiry officials shall not ask, and members shall not be required to reveal, whether a member is a heterosexual, a homosexual, or a bisexual. However, upon receipt of credible information of homosexual conduct ... commanders or appointed inquiry officials may ask members if they engaged in such conduct. But the member should first be advised of the DOD policy....

Navadmin 033/94 ¶¶ 4, 9.C(3).

The current statute and regulations thus have both old and new components. The parts mandating discharge of a service member who has committed homosexual acts are substantially the same as those in effect for many years. The parts concerning inquiries to members as to their status ("don't ask, don't tell") are new.

## IV.　EQUAL PROTECTION CHALLENGE

It is uncontested that plaintiff engaged in homosexual acts, and intends to continue doing so, as he told Lieutenant Commander Quinn. This provides one of the two grounds for the recommended discharge.

■　Plaintiff claims that he is shielded from discharge by his right to equal protection of the laws. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." Fifth Amendment due process assures every person the equal protection of the laws. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (*citing Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)).

■　The Ninth Circuit has held that homosexuals are not a suspect or quasi-suspect class for equal protection purposes; therefore, judicial review of a classification based on homosexuality is limited to the rational basis test. *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 571 (9th Cir.1990). The court must determine whether the classification serves a legitimate governmental purpose, and whether it is rationally related to the achievement of that purpose. If the answers are yes to both questions, equal protection has not been violated. *See Cammermeyer v. Aspin,* 850 F.Supp. at 914–15 (*citing Jackson Waterworks, Inc. v. Public Utilities Comm'n,* 793 F.2d 1090, 1094 (9th Cir.1986)).

■　Here there is no dispute as to the first part of the test. The parties agree that maintaining effective armed forces is a legitimate governmental purpose. They disagree as to the second part of the test—whether the classification is rationally related to that purpose.

Congress and the military have concluded that service members who engage in homosexual acts present an unacceptable risk to morale, good order, and discipline. Plaintiff, attacking the legislation, has filed expert declarations, reports, articles, and other materials showing that homosexuals—including many who were not celibate—have served in the armed forces ably, devotedly, and often with valor. There is no doubt that this is true. *See, e.g., Watkins v. U.S. Army,* 875 F.2d 699, 703–04, 731 (1989); *Meinhold v. U.S. Dept. of Defense,* 808 F.Supp. 1455, 1456, 1458 (C.D.Cal.1993); Comment, *Is "Don't Ask, Don't Tell" Constitutional? Legislative and Judicial Reform of the Military's Ban on Gay Men and Lesbians,* 40 Wayne L.Rev. 1273, 1298–99, 1304–05 (1994). It follows, plaintiff argues, that a policy of discharging virtually all who engage in homosexual acts is based only on prejudice or bias, and fails the rational basis test. *See generally Palmore v. Sidoti,* 466 U.S. 429, 433, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984); *Cleburne,* 473 U.S. at 448, 105 S.Ct. at 3258.

Plaintiff's argument, appealing as it might be, is foreclosed by earlier decisions that this court is bound to follow. The Ninth Circuit

has held that the military may constitutionally discharge members for homosexual *conduct*, as distinguished from mere *status*. In *Meinhold*, the court stated:

> On the merits, we defer to the Navy's judgment that the presence of persons who engage in homosexual conduct, or who demonstrate a propensity to engage in homosexual conduct by their statements, impairs the accomplishment of the military mission.

34 F.3d at 1472.

The *Meinhold* court also held that a service person's *statements* would justify discharge if they showed an intent to commit homosexual acts, rather than mere status or orientation:

> [T]he regulations can be read to reach a statement of homosexuality only when the statement itself manifests a concrete, expressed desire or intent to engage in homosexual acts. Construing the regulations in this way is consistent with the military judgment that homosexual *conduct* is incompatible with military service, and with our obligation to construe regulations to as to avoid constitutionally problematic results.

*Id.* (Emphasis in original).

Thus, while holding that a service member could not be discharged solely because of his statement "I am in fact gay," *id.* at 1479–80, the *Meinhold* court confirmed earlier decisions that administrative discharges for homosexual conduct do not violate equal protection. *See also Dronenburg v. Zech*, 741 F.2d 1388, 1397–98 (D.C.Cir.1984); *Rich v. Secretary of the Army*, 735 F.2d 1220, 1228–29 (10th Cir.1984).

The courts holding or implying that homosexual status alone cannot warrant discharge have also recognized that separation for homosexual conduct is a different matter. *E.g., Pruitt v. Cheney*, 963 F.2d 1160, 1162 (9th Cir.1991) ("[T]here is no evidence in this case that she engaged in homosexual acts ..."); *Dahl v. Secretary of the United States Navy*, 830 F.Supp. 1319, 1335 (E.D.Cal.1993) (the 1982 regulation "singles out homosexuals for discharge absent any evidence of prohibited conduct ..."); *Cammermeyer*, 850 F.Supp.

at 918 ("[T]he parties acknowledge for purposes of this litigation that, under [citations omitted], the government may exclude individuals from military service on the basis of homosexual conduct.... The Ninth Circuit has recognized a distinction between homosexual status or orientation and conduct.").

*Meinhold* and the other cases cited above were decided under policies in effect before 1994. As to discharges for homosexual acts, these precedents still apply because the current policy is essentially the same, and they require that plaintiff's equal protection challenge be rejected.

## V. SUBSTANTIVE DUE PROCESS CHALLENGE

▇▇▇▇ Plaintiff contends that his discharge for having committed homosexual acts violates his right to substantive due process under the Fifth Amendment. This right bars arbitrary governmental actions that invade protected privacy. *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973); *Carey v. Population Services Internat'l*, 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977). The question is whether the challenged action has a reasonable relation to a legitimate government interest. *Beller*, 632 F.2d at 808.

Here again, the Ninth Circuit has decided the issue. In *Beller*, the court of appeals upheld, against a substantive due process challenge, a "blanket rule requiring discharge of all who engage in homosexual conduct." 632 F.2d at 812. In the present case it is undisputed that plaintiff's conduct fell within the statutory definition of "homosexual act" (*see* 10 U.S.C. § 654(f)); that is enough, and proof of criminal sodomy is not required. The *Beller* court stated:

> [T]hese appeals require an assessment of a military regulation which prohibits personnel from engaging in homosexual conduct while they are in the service. We conclude, in these cases, that the importance of the government interests furthered, and to some extent the relative impracticality at this time of achieving the Government's goals by regulations which turn more precisely on the facts of an individual case, outweigh whatever heightened solicitude is

appropriate for consensual private homosexual conduct.

*Id.* at 810.

In 1994, the Ninth Circuit cited *Beller,* with other cases, for the rule that discharge for homosexual conduct is constitutionally permissible. *Meinhold,* 34 F.3d at 1477, n. 7. The substantive due process challenge must be rejected.

## VI. FIRST AMENDMENT CHALLENGE

 Plaintiff argues that his discharge would violate his First Amendment rights because his statements, including those made to Lieutenant Commander Quinn, constituted political speech. While the government may not rely on information that would impinge on First Amendment rights if there is no connection between the information sought and the state's interest, *Dawson v. Delaware,* 503 U.S. 159, 167, 112 S.Ct. 1093, 1099, 117 L.Ed.2d 309 (1992), where such a connection does exist, the information may be used even though communicated by speech or expressive activity. *See, e.g., Wisconsin v. Mitchell,* —— U.S. ——, ——, 113 S.Ct. 2194, 2201, 124 L.Ed.2d 436 (1993), holding that the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." The claim that discharge for a statement that one is a homosexual violates the First Amendment appears to have been rejected by every court that has considered the issue, including the Ninth Circuit. *See, e.g., Pruitt v. Cheney,* 963 F.2d 1160, 1163 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992) (the service member "was discharged not for the content of her speech, but for being a homosexual"); *Ben–Shalom v. Marsh,* 881 F.2d 454, 462 (7th Cir.1989), *cert. denied,* 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990); *Rich,* 735 F.2d at 1224.

## VII. ADMISSIBILITY OF PLAINTIFF'S STATEMENT

 Plaintiff argues on two grounds that his statement to Lieutenant Commander Quinn that he had had sexual relations with men should not have been considered by the board. He contends, first, that he was denied procedural due process because the officer did not advise him of his rights under Article 31(b) of the Uniform Code of Military Justice, 10 U.S.C. § 831(b). Article 31(b) provides:

No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

But plaintiff was not prosecuted, and will not be. Article 31(b) is directed "solely to ... suppression of evidence in court martial proceedings...." *United States v. Newell,* 578 F.2d 827, 832–33 (9th Cir.1978). Because an administrative discharge proceeding is not criminal in nature, *Garrett v. Lehman,* 751 F.2d 997, 1002–03 (9th Cir.1985), Article 31(b) does not apply.

Plaintiff contends, second, that the board considered his admission of homosexual acts in violation of the "don't ask" component of the new policy. But Navadmin 033/94 states that it does not "provide the member with any basis for challenging the validity of any proceedings or the use of any evidence, including a statement by the member in any proceeding." Navadmin 033/94 ¶ 9(C)(3). And in any event, when the interview took place in 1992 the new policy was more than a year in the future. The interview conformed to then-existing regulations.

 At the board hearing plaintiff placed in evidence an unsworn written statement by himself saying that Lieutenant Commander Quinn told him on December 5, 1992, that the only purpose of the interview was to help the captain determine if he was trying to avoid a forthcoming deployment, and that the information would not be used as evidence. He has made the same contention in a declaration filed in this court. Dkt. # 67. Neither before the board, nor in this court,

has plaintiff argued that the Navy is estopped to use the December 1992 statement. Any such argument is therefore waived. *Wallace v. Dept. of the Air Force,* 879 F.2d 829, 832 (Fed.Cir.1989). If the argument were raised, the record would fail to meet the requirements for estoppel against the military. *See Watkins v. U.S. Army,* 875 F.2d 699, 709 (9th Cir.1989). The board's legal advisor, a judge advocate officer who decides evidentiary questions, found that "Lieutenant Commander Quinn did advise Petty Officer Philips of the DOD policy in existence at the time that the statement was taken" (Record of Proceedings 48–51), and ruled the statement admissible. Plaintiff unquestionably knew that discharge proceedings would follow. There is no basis for barring the Navy from using his admissions made in the interview.

## VIII. CHALLENGE TO OTHER PARTS OF THE "DON'T ASK, DON'T TELL" POLICY

█ For the reasons given above, plaintiff's discharge from the Navy must be upheld on the basis of the board's finding that he engaged in homosexual acts. The other ground for plaintiff's discharge, found by the board, was that he had stated he was a homosexual and had failed to rebut the presumption, raised by that statement, that he engaged or intended to engage in homosexual acts. *See* 10 U.S.C. § 654(b)(2); Navadmin 033/94 ¶ 4A. Plaintiff contends that the presumption that one who announces a homosexual status or orientation has committed, or is likely to commit, homosexual acts simply restates the policy of discharging for status alone, which has been held unconstitutional. This argument may well have merit. *See* Note, *Challenging the Constitutionality of President Clinton's Compromise: A Practical Alternative to the Military's "Don't Ask, Don't Tell" Policy,* 28 J.Marshall L.Rev. 179 (1994); Comment, *Is "Don't Ask, Don't Tell" Constitutional? Legislative and Judicial Reform of the Military's Ban on Gay Men and Lesbians,* 40 Wayne L.Rev. 1273 (1994). The issue should not be decided here, however, because the other basis for plaintiff's discharge—his admittedly having engaged in homosexual acts—must be upheld

and disposes of the case. Courts should not reach constitutional issues that are unnecessary to the decision. *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 501–02, 105 S.Ct. 2794, 2800–01, 86 L.Ed.2d 394 (1985); *Allen v. Wright,* 468 U.S. 737, 750–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984); *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 3324–25, 4 L.Ed.2d 524 (1960); *Ashwander v. TVA,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

## IX. BACK PAY CLAIM

Plaintiff's claim for back pay has been expressly waived in the briefs.

## X. CONCLUSION

█ The law of this circuit is that a service member may not be discharged solely because of homosexual status, but may be because of homosexual acts. *Meinhold, supra.* The current regulations reflect that distinction, and are a modest step toward tolerance. They still result, however, in a loss to the nation of soldiers and sailors who serve with honor. This case is an example. In the order recommending Petty Officer Philips's discharge based on the board's findings, his commanding officer has written:

> Since reporting on board TPU Puget Sound in December 1992 for administrative processing, Petty Officer Philips has consistently proven to be a 4.0 Sailor. Always willing to accept additional responsibilities, he has excelled at every endeavor.
>
> Even though his future in the military has been uncertain since December 1992, he has continued to serve the Navy to the utmost of his ability and performed remarkably well.
>
> If ever DOD policy changes and Petty Officer Philips is called back to active duty, I have utmost confidence that he will have

a highly productive career and serve the Navy with pride and professionalism.

Record of Proceedings at 2–3.

"Upholding the challenged regulations as constitutional," as the Ninth Circuit has said, "is distinct from a statement that they are wise." *Beller* at 812. Before long, rules that limit military service by homosexuals to those who are celibate or furtive, and that require separation for private, off-duty, consensual conduct, may be seen as foolish and cruel. *See Steffan v. Perry,* 41 F.3d 677, 721 (D.C.Cir.1994) (Wald, J., dissenting). But policy-making is not for the courts. Established law requires that the honorable discharge of Petty Officer Philips be held constitutional. It follows that defendants' summary judgment motion must be granted, and plaintiff's motion denied. Judgment will be entered accordingly.

The clerk is directed to send copies of this order to all counsel of record.